IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRENDA K. RANDOLPH, | ) | CASE NO. 3:15 CV 1380 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

Before me[1] is an action by Brenda K. Randolph under 42 U.S.C. § 405(g) for judicial

review of the final decision of the Commissioner of Social Security denying her application

for disability insurance benefits.[2] The Commissioner has answered[3] and filed the transcript

of the administrative record.[4] Under my initial[5] and procedural[6] orders, the parties have

---

[1] ECF # 21. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 7.

[4] ECF # 8.

[5] ECF # 5.

[6] ECF # 14.

briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] After review of the briefs, the issues presented, and the record, it was determined that this case can be decided without oral argument.

## Facts

### A.    Background facts and decision of the Administrative Law Judge ("ALJ")

Randolph who was 54 years old at the time of the administrative hearing,  is a high school graduate and is married.[10]  Her past relevant work history includes work as a mail sorter, machine operator, assembler, and a nurse's aide.[11] Randolph has not been employed since 2009 and relies on her husband to support her financially.[12]

The ALJ, whose decision became the final decision of the Commissioner, found that Randolph had the following severe impairments: obesity, pacemaker implantation, coronary artery disease, diabetes mellitus with neuropathy, hypertension, chronic obstructive pulmonary disease, nocturnal hypoxia, bipolar disorder, anxiety disorder, and personality disorder (20 CFR 404.1520(c)).[13]

---

[7] ECF # 29 (Commissioner's brief); ECF # 16 (Randolph's brief).

[8] ECF # 28 (Commissioner's charts); ECF # 17 (Randolph's charts).

[9] ECF # 17 (Randolph's fact sheet).

[10] Transcript ("Tr.") at 481

[11] *Id*. at 498-499.

[12] *Id*. at 482.

[13] *Id.* at 429.

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Randolph's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant could lift 20 pounds occasionally and 10 pounds frequently. In an eight-hour workday, she could stand or walk six hours and sit six hours. She would have unlimited ability to push and pull except as defined by the ability to lift and carry. She could frequently climb ramps and stairs, balance, stoop, kneel, crouch and crawl. She could never climb ladders, ropes, or scaffolds. She should avoid concentrated exposure to extreme cold and heat, humidity, dust, fumes, gases and poor ventilation. She should avoid all exposure to unprotected heights and machinery. From a mental standpoint, the claimant could have only occasional and superficial contact with supervisors, coworkers, and the general public with no strict time or production demands and a relatively static work environment with static work processes and procedures.[14]

The ALJ found Randolph capable of her past relevant work as mail sorter.[15]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Randolph could perform.[16] The ALJ, therefore, alternatively, found Randolph not under a disability at step 5.[17]

---

[14] *Id.* at 433.

[15] *Id.* at 440.

[16] *Id.* at 440-441.

[17] *Id.*

-3-

**B.**   **Issues on judicial review**

Randolph asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Randolph presents the following issues for judicial review:

- Whether ALJ's properly weighed the medical evidence.[18]

For the reasons that follow, I will conclude that the ALJ's finding of no disability is not supported by substantial evidence and, therefore, must be remanded.

## Analysis

**A.**   **Standards of review**

**1.**   *Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

---

[18] ECF # 16 at 17.

-4-

> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[19]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[20] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[21]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**2.**    ***Treating physician rule and good reasons requirement***

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from

---

[19] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[20] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[21] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[22]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[23]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[24] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[25]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[26] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[27] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[28] In deciding if such

---

[22] 20 C.F.R. § 404.1527(d)(2).

[23] *Id.*

[24] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[25] *Id.*

[26] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[27] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[28] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

-6-

supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[29]

In *Wilson v. Commissioner of Social Security*,[30] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[31] The court noted that the regulation expressly contains a "good reasons" requirement.[32] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[33]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[34] It drew a distinction between a

---

[29] *Id.* at 535.

[30] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[31] *Id.* at 544.

[32] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[33] *Id.* at 546.

[34] *Id.*

-7-

regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[35] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[36] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[37]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[38] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[39] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[40] *Blakley v. Commissioner of Social Security*,[41] and *Hensley v. Astrue*.[42]

---

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[39] *Id.* at 375-76.

[40] *Rogers*, 486 F.3d 234, 242 (6th Cir. 2007).

[41] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[42] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[43] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[44] These factors are expressly set out in 20 C.F.R. §§ 404.1527(d)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (3)-(6).[45] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[46]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[47] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[48] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[49] specifically the frequency of

---

[43] *Gayheart*, 710 F.3d at 376.

[44] *Id.*

[45] *Id.*

[46] *Rogers*, 486 F.3d at 242.

[47] *Gayheart*, 710 F.3d at 376.

[48] *Id.*

[49] *Id.*

the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[50] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[51]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.

> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[52]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[53] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[54] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating

---

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] *Rogers*, 486 F.3d 234 at 242.

[54] *Blakley*, 581 F.3d at 406-07.

-10-

physician disagrees with the opinion of a non-treating physician[55] or that objective medical evidence does not support that opinion.[56]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[57] The Commissioner's *post hoc* arguments on judicial review are immaterial.[58]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

---

[55] *Hensley*, 573 F.3d at 266-67.

[56] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

[57] *Blakley*, 581 F.3d at 407.

[58] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

- the failure to mention and consider the opinion of a treating source,[59]

- the rejection or discounting of the weight of a treating source without assigning weight,[60]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[61]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[62]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[63] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[64]

The Sixth Circuit in *Blakley*[65] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[66] Specifically, *Blakley* concluded that "even if we were to agree

---

[59] *Blakley*, 581 F.3d at 407-08.

[60] *Id.* at 408.

[61] *Id.*

[62] *Id.* at 409.

[63] *Hensley*, 573 F.3d at 266-67.

[64] *Friend*, 375 F. App'x at 551-52.

[65] *Blakley*, 581 F.3d 399.

[66] *Id.* at 409-10.

that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[67]

In *Cole v. Astrue*,[68] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[69]

### 3.    *Credibility*

As the Social Security Administration has recognized in a policy interpretation ruling on assessing claimant credibility,[70] in the absence of objective medical evidence sufficient to support a finding of disability, the claimant's statements about the severity of his or her symptoms or limitations will be considered with other relevant evidence in deciding disability:

> Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching

---

[67] *Id.* at 410.

[68] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[69] *Id.* at 940.

[70] Social Security Ruling (SSR) 96-7p, Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 61 Fed. Reg. 34483 (July 2, 1996).

a conclusion about the credibility of the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence.[71]

The regulations also make the same point.

We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled. However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work ... solely because the available objective medical evidence does not substantiate your statements.[72]

Under the analytical scheme created by the Social Security regulations for determining disability, objective medical evidence constitutes the best evidence for gauging a claimant's residual functional capacity and the work-related limitations dictated thereby.[73]

As a practical matter, in the assessment of credibility, the weight of the objective medical evidence remains an important consideration. The regulation expressly provides that "other evidence" of symptoms causing work-related limitations can be considered if "consistent with the objective medical evidence."[74] Where the objective medical evidence does not support a finding of disability, at least an informal presumption of "no disability" arises that must be overcome by such other evidence as the claimant might offer to support his claim.

---

[71] *Id.* at 34484.

[72] 20 C.F.R. § 416.929(c)(2).

[73] *Swain*, 297 F. Supp. 2d at 988-89.

[74] 20 C.F.R. § 404.1529(c)(3).

-14-

The regulations set forth factors that the ALJ should consider in assessing credibility. These include the claimant's daily activities; the location, duration, frequency, and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; and treatment or measures, other than medication, taken to relieve pain.[75]

The specific factors identified by the regulation as relevant to evaluating subjective complaints of pain are intended to uncover a degree of severity of the underlying impairment not susceptible to proof by objective medical evidence. When a claimant presents credible evidence of these factors, such proof may justify the imposition of work-related limitations beyond those dictated by the objective medical evidence.

The discretion afforded by the courts to the ALJ's evaluation of such evidence is extremely broad.  The ALJ's findings as to credibility are entitled to deference because he has the opportunity to observe the claimant and assess his subjective complaints.[76] A court may not disturb the ALJ's credibility determination absent compelling reason.[77]

## B.    Application of standards

This case presents yet again a challenge to the way the ALJ weighed and treated the opinion of a treating source under the regulations and the relevant controlling case law, as well as an issue arising from the finding concerning the credibility of the claimant.

---

[75] 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii).

[76] *Buxton*, 246 F.3d at 773.

[77] *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

-15-

Here, the ALJ gave "minimal weight" to the opinions of Dr. Mark Mueller, M.D., a treating physician, and Dr. Steven Katz, M.D., a treating psychiatrist.[78]  The ALJ specifically noted that Dr. Mueller's two opinions stated that Randolph would physically be "capable of only a reduced range of sedentary work," would "be incapable of even low stress work due to mental symptoms" and would "miss work three times a month," all of which, taken together, would "be work preclusive."[79]  The ALJ further observed that Dr. Katz's opinion was that Randolph would have "moderate to marked" limitations in most areas of mental related tasks, and, similar to Dr. Mueller, also opined that she would miss work more than three days per month.[80]

As reasons for the lesser weight in these instances, the ALJ observed generally that "these opinions rely quite heavily on the subjective reports of symptoms provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported, rather than [rely upon any] objective evidence."[81]  He further noted that "insistent" and "demanding" patients may often obtain favorable, supportive notes from a physician who then provides such favorable opinions, even where, as here, the opinion "departs substantially from the rest of the evidence of record."[82]  This process of doctors crafting

---

[78] Tr. at 439.

[79] *Id.*

[80] *Id.*

[81] *Id.*

[82] *Id.*

-16-

favorable opinions unsupported by the evidence, the ALJ suggests, is done simply to "satisfy their patients [*sic*] request and avoid unnecessary doctor/ patient tension."[83]

The ALJ's remarks concerning the alleged "real"- even fraudulent- motives that may lie behind the actions by the claimant or his physicians are to be regarded with extreme wariness by a reviewing court; especially where the "proof" is simply the assertion that the action was taken solely for reasons of self-interest. Were the shoe on the other foot, the Commissioner would, with justification, vigorously object to a claimant's assertion that the "real" reason an ALJ found no disability was simply to avoid paying benefits, although that would obviously be in the economic self-interest of the government.

Plainly, it is naive to assume that self-interest never occurs with either a claimant or the Commissioner. But the fact is that making an assertion that one party could only have arrived at its position because it had a base motive to do so is a dangerous game to play, especially by an ALJ, given that disability determination hearings are supposed to be non-adversarial.[84] That process is, and must be, scrupulously based on strict compliance with the facts and regulations alone, with the sole goal of reaching the result required by the facts and the law, and then explaining that result with a clear statement of good reasons capable of

---

[83] *Id.*

[84] *See, Heckler v. Campbell,* 461 U.S. 458, 470 (1983).

meaningful judicial review. Impugning improper motives to a claimant or her physician is decidedly not a good reason for denying a claim.[85]

That said, as Randolph points out, the ALJ's contention, without specific supporting facts, that Dr. Mueller's opinion was "inconsistent with and not supported by the evidence," is itself belied by Dr. Mueller's own opinions in 2012 and 2013. Both opinions, which utilize the same form, note under the section headed "clinical findings," that the supporting evidence for the opinion includes Randolph's history of coronary bypass surgery in November of 2009, as well as an abnormal stress test and echocardiogram, as well as "labwork and psychiatric exams."[86]

Further, on just the next page, under the heading "laboratory and diagnostic test results" that support the opinion, Dr. Mueller specifically cites laboratory tests showing "A, C 7.7"[87] or "A,C 7.5,"[88] with the 2013 opinion adding that Randolph had "Cholesterol 236, triglycerides 599."[89] Moreover, both opinions provide a clear medical explanation for

---

[85] *See, Wells v. Apfel,* 234 F.3d 1271, 2000 WL 1562845 at * 5 (6th Cir. 2000)(table case). The burden of showing some disqualifying interest on the part of either party rests on the party making the assertion and cannot "be based on speculation or inference."

[86] Tr. at 1426, 2106.

[87] *Id.* at 2107.

[88] *Id.* at 1427. There is no further clarification in Dr. Mueller's opinions of what lab tests are referred to by these initials.

[89] *Id.* at 2107.

Randolph's pain as being cause by "diabetes, angina, CAD [coronary artery disease]."[90] Dr. Mueller also attached a list of Randolph's medications[91] and listed the specific emotional factors - "bipolar disorder, ADHD, panic" - that would limit Randolph.[92]

Far from being simply a sympathetic recounting of subjective symptoms with no grounding in objective medical evidence, Dr. Mueller's two opinions contain particular clinical findings, laboratory and diagnostic tests that Dr. Mueller asserts support his opinions. He also provides multiple medical reasons as to the causes of the pain complained of by Randolph, and he sets out the medications that have a role in supporting the diagnoses and in explaining the treatment.

In response to this level of detail from a treating source, the ALJ's broad and general comment about the opinions being "inconsistent with and unsupported by" medical evidence to be incapable of meaningful judicial review, and so not a good reason subject to downgrade the opinions of a treating source.

The Commissioner's remaining arguments are distinctly unpersuasive.  While it is true, as the Commissioner claims, that the ALJ is not required to conduct a "factor-by-factor" analysis of a treating source opinion,[93] that maxim relates to the common-sense understanding that an ALJ need not discuss every factor in the two-step analysis of not

---

[90] *Id*. at 2108.

[91] *Id.* at 2110.

[92] *Id*. at 2111.

[93] ECF # 27 at 22.

assigning controlling weight - such as length of treatment relationship or medical specialty - when those factors are not at issue or the matter may be resolved on the basis of a discussion of only some of the listed factors.  It in no way, as the Commissioner suggests, is license for an ALJ to totally ignore specific supporting evidence in a treating source opinion by pronouncing the entire opinion as somehow "inconsistent" with an unspecified contrary fact. Moreover, the claim that Randolph failed to point to any *Gayheart* factor that the ALJ did not consider[94] is, by itself, wholly insufficient to excuse the ALJ from his regulatory requirement of supplying the claimant and this Court with a good, reviewable reason for not fully crediting the opinion of Dr. Mueller.[95]

This consideration of the ALJ's analysis of Dr. Mueller's opinions is enough to establish that there is not substantial evidence to support the ALJ's decision in this case. It should not be understood as affirming the ALJ's decision in any other respect, especially in his analysis of Dr. Katz's opinion, which is not addressed here.

## Conclusion

For the reasons stated, I find that substantial evidence does not support the Commissioner's decision in this case, and thus the matter is remanded for further proceedings consistent with this opinion.

---

[94] Id. at 23.

[95] The opinion in *Smith v. Comm'r of Soc. Sec.*, No.5:13cv870, 2014 WL 1944247 at *8 (N.D. Ohio, may 14, 2014) sets out an analytical template that if used, greatly assists with meaningful judicial review.

-20-

IT IS SO ORDERED.


Dated: August 30, 2016                         s/ William H. Baughman, Jr.
                                               United States Magistrate Judge